UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID SEATON,

                              Plaintiff,

        -against-                                        5:06-CV-0756 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                              Defendant.
_____

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

       On June 4, 2004, Plaintiff David W. Seaton ("Plaintiff"), filed an application for Disability

Insurance Benefits ("DIB") under the Social Security Act ("the Act").  In that application, Plaintiff

asserts that he has been disabled since approximately November 1, 2003.  The Commissioner of

Social Security ("the Commissioner") denied Claimant benefits for lack of disability.

       Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).  Compl. (Dkt. No. 1).  Both parties have moved for judgment on the

pleadings.  For reasons that follow, this case is remanded for further proceedings.

## II.    BACKGROUND

### A.  Plaintiff's History

        Plaintiff was born November 25, 1955, and was 48 years old at the alleged onset date of his

disability.  R. 47, 56.[1]  He has a ninth grade education and never received a GED.  R. 64, 262.  For

24 years, from 1979 to 2003, Plaintiff worked as a utility operator at a chocolate factory.  R. 60,

_____

        [1] Citations to the underlying administrative record (Dkt. No.5) are designated as "R."

262.  In that position, he was required to hang sacks of powdered milk weighing approximately

2000 lbs.  R. 60, 262.  Plaintiff has a history of tobacco and alcohol use.  R. 127, 134-36, 223.

Plaintiff testified that he first began to experience numbness in his legs during a long car ride

that he took in November 2003.  The numbness dissipated once he got out of the car.  R. 263.  Prior

to this incident, Plaintiff experienced shortness of breath and pain in the back.  R. 170, 168.  On

August 13, 2003 and August 22, 2003, Plaintiff went to see Dr. Jayakumar Thotambilu, who noted

Plaintiff suffered from hypertension, but that his blood pressure had come under control with

medication.  Dr. Thotambilu noted Plaintiff's back pain, for which he prescribed Paxil and Xanax,

and arranged for an MRI and x-rays.  R. 169.  Following the MRI, Dr. Thotambilu again noted that

Plaintiff was in a lot of pain from his back and found "MRI of the lumbosacral spine series three

view for fracture or subluxation . . . [and] no significant disc bulge or herniation . . . [or] significant

effacement of the thecal sac."  R. 168.  The doctor noted that Plaintiff displayed "L5-S1 central disc

protrusion . . . marked degradation images through the upper thoracic spine . . . mild disc bulges at

the [lower thoracic spines; and m]ild degenerative disc disease.  No significant canal stenosis is

appreciated."  R. 168.  He prescribed Flexeril and physical therapy.  R. 168.

Plaintiff, continuing to suffer from back and buttock pain despite months of treatment by Dr.

Christiana, a chiropractor, R. 99-119, went to see Dr. Karen Beckman, M.D. on December 29, 2003.

R. 223-24.  Plaintiff told Dr. Beckman that he was having difficulty sleeping, but denied that he was

suffering from shortness of breath or chest pain.  Dr. Beckman diagnosed Plaintiff as suffering from

"[b]ack pain and neurological symptoms with increased reflexes" after noting that "[t]here is some

tenderness at his lower spine and across his SI joints bilaterally . . . Sensation is intact throughout.

Strength is intact throughout.  Gait is within normal limits."  R. 223-24.  She referred Plaintiff to a

2

neurologist and surgeon.  R. 224.

On February 24, 2004, Plaintiff, complaining of "heaviness, stiffness, and difficulty with his gait and balance[,] . . . burning in his legs . . . [and] neck stiffness" went for a neurological consultation conducted by Hassan Shukri, M.D.  Dr. Shukri assessed Plaintiff as suffering from "weakness in his right upper and lower extremities with sustained clonus" the etiology of which "could be either cervical or thoracic myelopathy either due to herniated disc or spondylosis."  R. 121-23.  Dr. Shukri noted that Plaintiff had decreased sensation to pinprick and recommended an MRI.  He speculated that Plaintiff "could have some lumbar spinal stenosis with some radiculopathy."  R. 123.  Following the MRI, which revealed a herniated disc, Dr. Shukri referred Plaintiff for a neurosurgical consultation.  R. 120.

Dr. David Eng, M.D., Ph.D. conducted that consultation on April 7, 2004.  R. 125.  Eng's evaluation found that Plaintiff's pinprick, light touch, vibratory, and position sense were intact; gait was unsteady; no straight leg raising; clonus present in both lower extremities and Hoffmann sign in both upper extremities.  Responding to Plaintiff's complaints of neck and right arm pain, hand and leg numbness, and stiffness in the legs, Dr. Eng found Plaintiff "clearly has signs of myelopathy" resulting from a C5-C6 cervical stenosis; he opined that surgery warranted.  R. 126-27.

Plaintiff saw Dr. Thotambilu again on May 26, 2004, complaining of chest pressure.  Dr. Thotambilu diagnosed Plaintiff as having multiple coronary risk factors and hypertension, but found that his medication had kept his blood pressure under control.  The doctor increased Plaintiff's Paxil prescription and arranged for him to undergo a Persantine Cardiolite stress test.  R. 166.

On July 1, 2004, Plaintiff saw Kalyani Ganesh, M.D. for a consultative orthopedic examination.  R. 129-32.  Diagnosing Plaintiff with myelopathy and herniated disc with foraminal

narrowing, Dr. Ganesh found that Plaintiff did not appear to be in acute distress and had a normal gait, was able to rise from a chair without difficulty; his hand and finger dexterity appeared intact and his grip strength was 5/5 bilaterally.  R. 130.  Plaintiff's cervical spine had full flexion and rotary movements with no cervical pain or spasm and no trigger points.  R. 131.  Plaintiff complained of pulling sensation in the thoracic spine and presented some reduced range of movement in his shoulder.  Dr. Ganesh found a full range of movement in Plaintiff's elbows, forearms, wrists, hips knees and ankles bilaterally, and no joint inflamation, effusion, instability, or muscle atrophy.  He displayed hypersensitivity to pinprick in his lower extremities.  His strength was deemed 4/5.  R. 131.  Dr. Ganesh opined that Plaintiff had no gross limitation as to sitting, standing, or using his upper extremities, but a moderate degree of limitation in walking, climbing, lifting, carrying, pushing, pulling, or repetitively using his upper extremities.  R. 131.

Also, on July 1, 2004, Plaintiff saw psychologist Kristen Barry, Ph.D. for a consultative psychiatric evaluation.  R. 133-37.  Barry noted that Plaintiff had no history of psychiatric hospitalizations or outpatient psychiatric treatment or counseling; Plaintiff was not taking any medications because they made him sick.  R. 133.  Claimant complained of poor sleep, decreased appetite, and depressed mood, though not so depressed as to be suicidal.  Barry found Plaintiff's prognosis from the psychological standpoint to be fair, and diagnosed him as suffering adjustment disorder with depressed mood.  Barry opined that Plaintiff is able to follow and understand simple directions and that he is able to maintain attention and concentration.  She recommended medical follow-up and continued use of psychiatric medications.  R. 136.

On July 23, 2004, before undergoing his stress test, Plaintiff, experiencing less shortness of breath but significant pain in his neck, returned to Dr. Thotambilu.  Dr. Thotambilu again

recommended the stress test and noted that Dr. Eng was considering the possibility of surgical

intervention to Plaintiff's fifth cervical vertebrae.  Plaintiff returned to Dr. Thotambilu on August

14, 2004, again complaining of back and chest pain, and shortness of breath.  Dr. Thotambilu found

Plaintiff's stress test positive for "periinfarct schemia," and he therefore strongly recommended a

cardiac catheterization.  R. 91.  That catheterization was performed August 19, 2004 and revealed

insignificant coronary artery disease and normal left ventricular functioning.

On September 13, 2004, Dr. Seok, a state agency medical consultant, reviewed Plaintiff's

file, and found that no significant limitation existed with regard to Plaintiff's cardiac condition.  Dr.

Seok proposed that Plaintiff's charts indicate he has a residual functional capacity of light with

further limitations of pushing or pulling objects over 20 pounds.  R. 171.  Dr. Seok opined Plaintiff

could stand or walk for up to 6 hours in an 8 hour day, and/or sit for the same duration.  R. 171.

On September 23, 2004, Plaintiff received another residual functional capacity assessment,

completed by C. Zelno, DA.  R. 173-78.  Zelno found Plaintiff could occasionally lift or carry 20

pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours in an 8 hour day, sit about 6

hours in an 8 hour day, and exhibited limited ability to push or pull in the upper extremities; based

on this, Plaintiff was deemed able to do light work.  R. 174-75.

On September 24, 2004, Ed Kamin, Ph.D., a non-examining psychologist, provided Plaintiff

with a mental residual functional capacity assessment in which Plaintiff was deemed to have "the

ability to maintain attention and concentration for an 8 hour work day[,] . . . make simple work

related decisions . . . [and] follow simple directions . . . . His ability to maintain a normal work day

without interruption from psychological symptoms is only moderately limited . . .  [as is] his ability

to get along with others."  R. 94.  Dr. Kamin determined that Plaintiff suffered only mild restrictions

in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties on maintaining concentration, persistence, or pace, and no episodes of deterioration. R. 179-92.

In May 2005, after Plaintiff's application for benefits was denied by the SSA, but prior to his hearing before an administrative law judge, Plaintiff received a physical medical source statement from Dr. Shukri. Dr. Shukri noted that Plaintiff is capable of low stress jobs, but could sit or stand less than 2 hours in an 8 hour day at intervals of no longer than 30-45 minutes at a time; rarely lift or carry objects weighing 10 pounds; never look down or turn his head right or left; occasionally hold his head in a static position; and never twist, stoop, crouch, or climb ladders or stairs. R. 227-31.

Plaintiff was hospitalized on May 12, 2005. Dr. Francis Arce, M.D. diagnosed Plaintiff as suffering from acute pancreatitis, new onset type II diabetes, chronic obstructive pulmonary disease, hypertension, hyperlipidiemia, renal insufficiency, cervical spine fusion at the level of C4 and C5, and anxiety disorder.

### B. Procedural History

The relevant procedural history may be summarized as follows: Plaintiff filed an application for DIB on June 4, 2004, alleging a disability for neck, spine, high blood pressure ("HPB"), and panic attacks, which began approximately November 1, 2003. R. at 47-49, 171, 263. On September 30, 2004, the Social Security Administration denied Plaintiff's claim after finding that he was not disabled under the rules. R. at 36-39. On October 8, 2004, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). R. 40. That hearing took place on June 23, 2005, before ALJ Charlie Paul Andrus. R. 257-76. Plaintiff, represented by counsel, testified at the hearing; a Vocational Expert, Dennis Conroy, was also present and testified. R. at 257-76. On September 2, 2005, ALJ Andrus issued a decision denying Plaintiff's application. R. at 14-16.

Plaintiff filed a timely request for review by the Appeals Council.  R. at 12-13.  On May 23, 2006, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  R. at 4-6.

Plaintiff, acting through counsel, commenced this action on June 15, 2006.  Compl. (Dkt. No. 1).  The Commissioner filed an Answer on November 20, 2006.  Dkt. No. 6.  Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  See Pl.'s Br. (Dkt. No. 7); Def.'s Br. (Dkt. No. 9).

## III.   LEGAL STANDARD

### A.  Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or that substantial evidence in the record does not support determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, even where substantial evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  Id.  Likewise, a reviewing court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial

7

factors underlying a determination such that the court is able to decide whether that determination is supported by substantial evidence, and the case should be remanded.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); see also  Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is

appropriate where the material facts are undisputed and where a court may make a judgment on the

merits with reference only to the contents of the pleadings.  Fed. R. Civ. P. 12(c); <u>Sellers v. M.C.</u>

<u>Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the

record and further development of the evidence is needed, or where the ALJ has applied an

improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir.

1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where

further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94

F.3d 34, 39 (2d Cir. 1996) (citation omitted).  Additionally, remand is appropriate to allow for the

consideration of additional new evidence which is material to the case and where good cause exists

for the failure to submit that evidence in prior proceedings.  Melkonyan v. Sullivan, 501 U.S. 89

(1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).  By contrast, reversal and remand

solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and

further development of the record would not serve any purpose.  <u>Rosa</u>, 168 F.3d at 83; <u>Parker</u>, 626

F.2d at 235; <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 644 (2d Cir. 1983).

### B.  Benefits Eligibility

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  20 C.F.R. § 416.905(a).  The Social Security Administration ("SSA")

has established a five-step sequential evaluation process to determine whether a claimant over the

age of 18 is disabled under the Social Security Act.  See 20 C.F.R. §§ 416.920, 404.1520; see also

<u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); <u>Bush v.</u>

9

Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).  "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that

burden in step five.  See Bowen, 482 U.S. at 146; Berry, 675 F.2d at 467 (citations omitted).

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers

whether the claimant is currently engaged in substantial gainful activity.[2]  If the claimant is not

engaged in such activity, the ALJ advances to step two of the analysis and considers whether the

claimant has a severe impairment meeting the "durational requirement"[3] and significantly limiting

her physical or mental ability to perform basic work activities.  In making this determination, the

ALJ does not consider the claimant's age, education, or work experience.  Assuming the ALJ finds

the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the

impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4

("the Listings").  If the ALJ concludes that the claimant's impairment(s) does meet or equal one or

more of the Listings, the claimant is deemed disabled.  If the claimant's impairment(s) does not

meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess

whether, despite the claimant's severe impairment, the claimant's residual functional capacity

("RFC")[4] allows him to perform his past work.  If the claimant is unable to perform his past work,

---

[2] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[3] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months.  20 C.F.R. § 404.1509.

[4] RFC is defined as the most a claimant can do after considering the effects of all his or her medically determinable physical and mental limitations, including those not deemed "severe."  See

the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors such as age, education, and work experience, whether the claimant could perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560; see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).


## IV.    DISCUSSION

### A.  The ALJ's Findings

In determining that Plaintiff was not disabled, the ALJ made the following findings: 1) Plaintiff had not engaged in substantial gainful activity during the relevant period; 2) Plaintiff's hypertension, cardiovascular impairments, diabetes, and pancreatitis are not severe impairments, but Plaintiff's back and neck pain and depression/adjustment disorder are severe impairments; 3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings; 4) Plaintiff's RFC allows him to perform simple routine work without frequent public contact, but Plaintiff is unable to perform all the requirements of his past work; and 5) after consideration of the testimony of a vocational expert and in light of Plaintiff's RFC, age, education, and work experience, Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  R. 18-24.

In reaching his conclusions regarding Plaintiff's RFC, the ALJ found that the treatment provided by Dr. Shukri "was not sufficient enough to classify Dr. Shukri as a treating physician," and that Dr. Shukri's opinion was "inconsistent with the overall medical record" and, therefore, entitled to "little weight."  R. 22.  The ALJ noted that his RFC assessment was also based on his

---

20 C.F.R. § 404.1545; SSR 96-8p.

finding that Plaintiff's credibility was "poor."  R. 22.

Plaintiff objects to the ALJ's finding at step 3, claiming that the ALJ's rationale was inadequate and that his conclusion that Plaintiff's cervical impairment is not equal to Listing 1.04 constitutes error.  Pl.'s Br. at 11-13.  Plaintiff next asserts that the ALJ erred in finding that Dr. Shukri does not qualify as a treating physician, and hence, that the ALJ failed to accord Dr. Shukri's opinion proper weight.  Id. at 13-15.  Plaintiff's further contends that the ALJ's finding that Plaintiff's credibility was poor was inappropriate.  Id. at 15-18.  Fourth, Plaintiff claims that the vocational expert's testimony cannot provide evidence in support of the ALJ's determination because that testimony was made in response to an inaccurate hypothetical.  Id. at 18.  Finally, in the alternative, Plaintiff contends that the vocational expert did not identify jobs which exist in significant numbers.  Id. at 19-20.

## A. The ALJ's Determination that Plaintiff's Impairment Does Not Meet or Equal Section 1.04 is Supported by Substantial Evidence

The third step of the SSA's five-step evaluation of disability claims requires the ALJ to determine whether any of a claimant's impairments, alone or in combination, meets or equals in severity those listed in Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii); § 404.1520(d).  Where a claimant's impairment(s) does meet or equal a listing, he is disabled.  20 C.F.R. § 404.1520.  The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Bull v. Astrue, 7:06-CV-551, 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008) (citation omitted).  To meet this burden, a claimant must show that his or her impairment "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how

severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original);

see also 20 C.F.R. § 404.1525(d).

Listing 1.04, which pertains to disorders of the spine, requires in pertinent part, that such a

disorder result in the compromise of a nerve root or the spinal cord, with "[e]vidence of nerve root

compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,

motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory

or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting

and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).  In concluding that Plaintiff does not

meet this Listing, the ALJ provides no analysis, stating only that "the examining and treating

physicians' reports show the neurological deficits required for Section 1.04(A) are not present."  R.

19.  He cites generally to the medical records of doctors Christiana, Shukri, Ganesh, Eng,

Thotambilu, and Beckman.  R. 19.

While the ALJ's provides no true rationale for his conclusion that Plaintiff does not meet

impairment 1.04, that conclusion finds support in the medical records cited in support of his

determination.  Primarily, in referencing Dr. Eng's opinions, the ALJ cites substantial evidence for

finding that Plaintiff is not suffering sensory or reflex loss.  See R. 126-27 ("pinprick, light, touch,

vibratory, and position sense were intact.  The motor exam was full and symmetric.").  Eng's

finding is at odds with that of Dr. Shukri, who found that Plaintiff displayed decreased sensation to

pinprick.  R. 123.  Nevertheless, Eng's neurological evaluation of Plaintiff, which was conducted

upon Shukri's recommendation, constitutes substantial evidence for finding that Plaintiff has no

reflex loss.  Additionally, Dr. Ganesh specifically noted that Plaintiff suffered no atrophy of

muscles; no other physician made a contrary finding.  R. 131.  This constitutes further evidence that

at least some of the criteria that Plaintiff must prove under Section 1.04 are not present.

**B. Dr. Shukri is not a "Treating Physician" and his Opinion is Inconsistent with other Medical Evidence in the Record**

In reaching his determination regarding Plaintiff's RFC, the ALJ found that Dr. Shukri should not be considered a "treating physician" and, because Dr. Shukri's opinion was inconsistent with the overall medical record, he afforded that opinion "little weight." R. 22. Plaintiff objects to both findings. Pl.'s Br. 13-15. Plaintiff contends that Dr. Shukri is a treating source, and as such his opinion was entitled to greater weight than the ALJ gave it, and that the ALJ was required to contact Shukri to explain conflicts between his opinion and other medical evidence in the record. Id. (citing 20 C.F.R. § 404.1527. 404.1512(e)(1)).

The SSA's regulations define a "treating source" as an

> acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and who has . . . an ongoing treatment relationship with [that claimant]. Generally, [the SSA] will consider that [a claimant has] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant] see[s] . . . the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s). [The SSA] may consider an acceptable medical source who has treated or evaluated [a claimant] only a few times or only after long intervals (e.g., twice a year) to be [that claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s).

20 C.F.R. § 404.1502. In light of this definition, the ALJ's determination that Dr. Shukri does not qualify as a treating source is reasonable. Dr. Shukri saw Plaintiff on only two occasions, once to provide a neurological consultation on February 24, 2004, R. 121-23, and once more on March 24, 2004, R. 120. Moreover, on the second visit, Dr. Shukri merely assessed Plaintiff's MRI results and referred him for a neurosurgical consultation. Thus, the ALJ's finding that these two visits did not

14

constitute an "ongoing treatment relationship" is reasonable and shall not be disturbed by this Court.

Given the above finding, Dr. Shukri is not covered under the "treating physician's rule."[5] Therefore, the ALJ's decisions to afford Dr. Shukri's opinion little weight and to not contact Dr. Shukri to explain perceived conflicts between the latter's medical source statement and other objective medical evidence were reasonable and not error.  The ALJ found Shukri's opinion was entitled to little weight because it was inconsistent with the findings of other medical sources.  As noted, Shukri's opinions regarding Plaintiff's reflexes are at odds with those of the neurosurgeon, Dr. Eng, who saw Plaintiff.  Compare R. 123 and R. 126-27.  Dr. Shukri's opinion was also inconsistent with that provided by Dr. Ganesh.  R. 129-32.

Dr. Shukri's medical source statement states that Plaintiff could sit or stand less than 2 hours in an 8 hour day in intervals of no longer than 30-45 minutes at a time; could rarely lift or carry objects weighing 10 pounds, never look down or turn his head right or left and occasionally hold his head in a static position; never  twist, stoop, crouch, or climb ladders or stairs; and had significant limitations with reaching, handling, or fingering.  R. 227-31.  This statement is inconsistent with the findings of Dr. Seok,[6] who assessed Plaintiff as being able to stand, walk, or for up to 6 hours in an 8 hour day.  R. 171.  As to Plaintiff's capacity in this regard, Dr. Shukri's findings are again inconsistent with those of Dr. Ganesh, who found no gross limitation with respect to sitting or

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[6] By nature of his position as a State agency medical consultant, Dr. Seok is deemed a qualified expert in the field of social security disability.  As such, the ALJ rightfully considered his opinion.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2); see also  Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing Shisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993).

standing and only moderate limitations in walking, climbing, lifting, and carrying.  R. 131.

Plaintiff's objection that the ALJ should have re-contacted Dr. Shukri when faced with such inconsistencies is equally flawed.  The regulations require an ALJ to contact a treating physician or other medical source whose report "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1512(e)(1).  Where, as here, however, "the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Rosa, 168 F.3d at 78 n.5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).  Because substantial evidence supports the ALJ's determination regarding Dr. Shukri's opinion, and because the ALJ was under no obligation to re-contact Shukri, the Court sees no basis to disturb the ALJ's conclusion.

**C.  The ALJ Assessment of Plaintiff's Credibility is Supported by Substantial Evidence**

In reaching his RFC determination, the ALJ considered Plaintiff's "demeanor as a witness," and from "the way he answered the questions and all of the other factors that go into assessing a witness' credibility" found Plaintiff's credibility poor.  The ALJ did not otherwise analyze how "all of the other factors" that go into the credibility assessment affected his conclusion.  He did, however, note that Plaintiff's credibility suffered in the ALJ's eyes from the fact that, despite his claimed neck and back pain and depression, and despite being prescribed medication, Plaintiff testified to not taking that medication.  The ALJ dismissed Plaintiff's excuse for this failure, that he was unable to afford the prescriptions as he had no insurance, by reference to the lack of evidence in the record that Plaintiff was denied treatment for lack of financial resources or that Plaintiff sought alternative indigent assistance.  R. 22.

Plaintiff insists that the ALJ committed legal error in making his credibility assessment.  Pl.'s Br. at 15-18.  First, Plaintiff insists that the ALJ should have credited his positive work history in reaching any credibility determination; second, Plaintiff asserts that the ALJ failed to follow the two-step process prescribed by the regulations; third, and relatedly, Plaintiff contends that the ALJ did not adequately apply the factors that must go into a credibility assessment, or make known the basis of his findings; finally, Plaintiff objects to the ALJ's reliance on Plaintiff's failure to follow his prescribed treatment despite Plaintiff's explanation that he could not afford the medication.  Id.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  An ALJ must provide specific reasons for his credibility finding; this rationale must be sufficiently specific to make clear to the claimant and reviewing courts what weight the ALJ afforded to the claimant's statements and the reasons for that weight.  See SSR 96-7p.  The ALJ's credibility assessment is entitled to great deference if it is supported by substantial evidence.  Murphy v. Barnhart, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529; Foster v. Callahan, No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).  The ALJ must first determine whether, based upon the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a).

17

Second, if the medical evidence establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and determine the extent to which they limit that claimant's capacity to work. See 20 C.F.R. § 404.1529(c). If the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's subjective complaints by considering the record in light of the following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ should also consider other factors, such as the claimant's prior work history and whether a claimant followed a prescribed course of treatment or was justified in failing to do so. SSR 96-7p; Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (same); SSR 82-59 (failure to follow proscribed treatment may be considered, but such failure must first be found unjustified).

Here, the ALJ failed to follow this two-step approach, provided insufficient rationale for his conclusions, and did not explicitly consider Plaintiff's lengthy and positive work history. Further, while the ALJ's assessment of a Plaintiff's demeanor at the hearing is an appropriate consideration, as is Plaintiff's failure to follow his prescribed treatment regime, the ALJ's basing his conclusion solely upon these criteria, particularly in light of his otherwise deficient analysis and Plaintiff's

18

potentially valid excuse for not taking his medications, see SSR 82-59; Shaw v. Apfel, 221 F.3d 126 (2d Cir. 200) (a claimant's inability to obtain treatment cannot be the basis for a denial of benefits), constitutes error and is cause for remand.

First, the ALJ's discussion of his RFC and credibility determination does not appear to follow the two-step process outlined in the regulation.  The ALJ makes no express finding as to the first step, determining whether an underlying medically determinable impairment could reasonably be expected to produce the alleged pain.  Defendant argues that the ALJ implicitly made this finding in determining that Plaintiff was restricted to exertionally light work.  Def.'s Br. at 11.  However, the step-one finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain."  Prentice v. Apfel, 1998 WL 166849, at *5 (N.D.N.Y. 1998).  Thus, Defendant cannot rely upon a finding of capacity for light work, which, as defined at 20 C.F.R. § 404.1567(b), includes such criteria.

Furthermore, the ALJ's application of the factors set forth in 20 C.F.R. § 404.1529(c)(3) at step two of the process is deficient.  The ALJ lists the factors that the regulations prescribe for making credibility determinations, R. 21, but provides no explanation as to how he applied many of these factors in the context of Plaintiff's statements.  The ALJ does discuss the location, duration, frequency, and intensity of Plaintiff's symptoms and, to a minor extent, Plaintiff's functional limitations. R. 20-21.  Additionally, in his discussion of Listing 12.04, the ALJ evaluates Plaintiff's activities of daily functioning.  There, the ALJ's cherry-picks from Plaintiff's statements regarding his ability to care for himself, R. 19-20, but the resulting findings "'do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves."  Manning v. Astrue, No. ,2010 WL 2243350 (N.D.N.Y. April 30,

19

2010) (quoting Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)).  Overall, the ALJ's

discussion is inadequate for present purposes as it does not address all of the factors involved in the

credibility assessment, nor consider those factors in the context of Plaintiff's subjective complaints.

Rather than base his credibility assessment on an express analysis of Plaintiff's statements in

light of the above factors, the ALJ simply states that he found Plaintiff's credibility as a witness to

be poor based on the way Plaintiff answered questions and Plaintiff's demeanor during the hearing.

This "analysis" is inadequate to allow the Court to determine whether the ALJ's credibility

determination is supported by substantial evidence.  Lewis, 62 F. Supp. 2d at 651 (requiring

sufficient specificity of basis for credibility assessment to allow for meaningful review); Rivera, 717

F.2d at 725 (an ALJ cannot place principal weight on his observations at a hearing; such

observations are entitled to only limited weight); Carroll v. Sec'y of Health and Human Servs., 705

F.2d 638, 643 (2d Cir. 1983).

Finally, the ALJ failed to expressly mention the Plaintiff's 24-year work history.  The

regulations prescribe that the ALJ consider this fact, and his failure to do so adds reason to remand

the case for further proceedings on Plaintiff's credibility and RFC.

### D.  The Vocational Expert's Response to an Inaccurate Hypothetical Cannot Provide Substantial Evidence

Plaintiff argues that the opinion of Dennis Conroy, the Vocational Expert ("VE") testifying at

Plaintiff's administrative hearing, cannot provide substantial evidence for the ALJ's finding that

jobs exist in significant numbers in the national economy which Plaintiff could perform.  Pl.'s Br. at

18.  Plaintiff contends that this is so because the hypothetical posed to the VE was inaccurate, as it

was based on an erroneous RFC determination.  As noted above, in making his RFC determination,

the ALJ "considered and made reductions based upon the claimant's demeanor as a witness," R. 22. Because the ALJ's overall credibility analysis was flawed, this Court cannot determine whether the RFC employed by the ALJ in posing a hypothetical question to the VE was supported by substantial evidence.  Upon remand, after conducting a more thorough assessment on the credibility issue, the ALJ should pose an appropriate hypothetical to the VE, consistent with his RFC findings.

**V.     CONCLUSION**

Given the above discussion, remand is appropriate to allow the ALJ to make further findings and/or clarify the basis of his decision consistent with this Memorandum-Decision and Order. Accordingly, it is hereby

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further administrative proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:          July 19, 2010
                Albany, New York

                                            Lawrence E. Kahn
                                            U.S. District Judge